Good morning. May it please the court? Yeah, the lectern will go up. There's a switch that, so they'll take the whole podium, right on your... Right here? Yeah, to your right, to my left. Thank you. Thank you. This is a federal sentencing guideline issue that centers on how a Story County, Iowa conviction was scored. The determination of this issue will determine what criminal history category should have been applied to Ms. Jesse. The conviction goes back to the year 2003. It's for an enhanced drug possession. It's an aggravated misdemeanor under Iowa law, which means the maximum sentence is an indeterminate period of incarceration up to two years. The question here is the length of the sentence imposed. Was the sentence imposed two years per the order of July 24th? Or was the order of imposing sentence the next day, which we consider a time served sentence of 332 days? Which is the sentence imposed? And the determination of that determines whether this gets scored at all. It's either three points or zero points. On July 24th, 2003, the associate district court judge in Story County, Iowa revoked Ms. Jesse's probation and imposed an indeterminate sentence of two years. Had matters ended there, this would have been scoreable as a sentence in excess of one year and one month. And therefore, scoreable as three points. But the next day, upon being alerted that Ms. Jesse had essentially already served her sentence, a new order was entered. But the new order didn't vacate the previous order. It just vacated the order of transportation and directed that she be discharged. I mean, that's what the language says. And so the question is, and you want us to draw an inference that he actually vacated the previous sentence, when actually what it did was vacate the transportation order and indicate that under Iowa procedures that she'd served the whole sentence, right? Well, the issue, the problem is under Iowa law, a court can only impose a sentence of imprisonment. How long that sentence actually is is determined by the Department of Corrections, earned time credits, jail credits, and parole. These are all out of the hands of the judge. The judge has no control whatsoever. The judge only gives the sentence. So in order to change the sentence that was imposed on the 24th from two years to a lesser sentence, the sentence imposed had to be changed. Well, did he really reduce the sentence? It looks to me like what he said was you've already served the sentence rather than, because it's a discharge order. You know, I was a state judge for a long time and signed discharge orders. I mean, and I never viewed those as vacating my previous judgment. Maybe I was wrong, though. Well, in order to determine, in order for the judge to say you've already discharged your sentence, the judge would have to award the earned time. And the judge has no authority under Iowa law to award earned time. Only the DOC can do that. So the judge tried to accomplish something, obviously. He just wanted her out of jail because she'd already served her sentence. It was a very practical thing. But I'd like to point out at this point, the clerk of court official records on Iowa Courts Online, which were admitted into evidence as Government's Exhibit 1, characterized this July 24th order as a time-served order. Now, the district court, in overruling our objection to the pre-sentence investigation report, said nowhere in the record of the Iowa Courts was this ever referred to as a time-served order. Well, it was. It's right there, page 5 of Government's Exhibit 1. The clerk of court is often charged with making sense of orders that come down because the clerk of court not only memorializes judgments that are entered in criminal courts, the clerk of court is actually involved in alerting the Department of Corrections when somebody's coming in. It's their statutory duty. So when that order comes in, the clerk of court is bound by statute to make some sense of it. And the clerk of court looked over the order of the 24th of July and the order of the 25th and decided and made an error that this was a time-served order. But the key to this whole decision is understanding that a court in Iowa and probably in most jurisdictions across this country only imposes sentences. They don't do the credit for the jail time. They don't do the earned time or the good time. They don't have anything to do with parole. In fact, most judgments tell the defendant that. So when a court imposes a judgment on the 24th and changes this in every operative fashion on the 25th, the court only has the authority to reimpose, to impose. That's where I'm drawing on my argument that the order was changed because the court has no authority to do anything else but impose a sentence. Now, if the judge would have sent Ms. Jessie down the road to the reception center at the Iowa Department of Corrections, then we don't have an objection at all. We're not here. That's governed by clear sentencing guideline commentary and a decision of this court. It's the time imposed, not the time served. But it's our position, due to Iowa statutory law, that this court, by releasing her and countermanding the order to take her to the Department of Corrections, had to have imposed a sentence of less than 365 days. That's because under Iowa law, an aggravated misdemeanor is punishable by up to two years. But the first 365 days can be a determinate sentence. A judge can give somebody seven days, three days, 100 days, 365 days. By law, if the judge goes over 365, it automatically shoots up to two years in an indeterminate sentence, and it automatically gets committed to the Department of Corrections. So there's no way that this order releasing Ms. Jessie and telling the sheriff not to take her to the Department of Corrections could have been anything other than 365 days or less. And the most reasonable conclusion to be drawn is the one the clerk of court drew, that it was actually a time served sentence. Otherwise, there's no authority for what the judge did. I just took a quick look at your brief, and I did not recall you pointing out to us, and I guess I want to ask you if you pointed out to Judge Ebby the statement in the clerk's record that it was a sentence of time served. Did anybody bring that to her attention? I don't recall you bringing it to our attention. This was not brought to her attention. Nobody mentioned it. It was the government's exhibit that they brought in. When I brought in, I went up to Story County and collected the actual court records and brought them in as exhibits at sentencing. When I showed up at sentencing, the government had exhibit one, and that was the exhibit that had the reference to time served. So, no, at the time of the sentencing, I barely looked at that. Thank you. I'm going to reserve the rest of my time. Thank you. Is it Mr. Lamekill? That's right, Your Honor. Thank you. You may proceed. Thank you. May it please the Court. The district court in this case correctly assessed three criminal history points for the sentence at issue in this appeal. In 2003, an Iowa state court revoked Jennifer Jesse's probation and sentenced her to a term of imprisonment of up to two years. Because that sentence on its face exceeded one year and one month, it earns three criminal history points under the sentencing guidelines. The district court's ruling in this case was fully consistent with the sentencing guidelines and this court's precedent, so the government would ask that the sentence be affirmed. I'd like to begin with the relevant provisions of the sentencing guidelines because, in the government's view, they're enough to resolve this issue. Under 4A.1.1 of the guidelines, criminal history points are based on the length of prior sentences of imprisonment. 4A.1.2 expands on that and explains that the length of a prior sentence of imprisonment is the maximum sentence imposed. The commentary to 4A.1.2 explains that the relevant term that we look at is the stated maximum of the prior sentence of imprisonment. And Application Note 2 gives some examples of that. Do you agree that if the second sentence on its face vacated the first sentence, that the appellant would prevail here? I don't, Your Honor, because I think if we interpret that second sentence as a time-served sentence,  My look at the record is that she actually served 428 days based on time in the violators program, time in Hightower Residential Facility, and then the time she served in Story County Jail. And those figures are spelled out in Ms. Jessie's application asking the court to order that sentence discharged. Her attorney specifically says in that application that Ms. Jessie's total credit for time served is 428.5 days. That is at page 7 of the appellant's addendum. And some of those same figures are referenced in the court's order revoking Ms. Jessie's probation with respect to the violators program and the residential facility. So even if the second order vacated the original order and changed it to a sentence of time served, by that time Ms. Jessie had served 428 days, which again is longer than the one month to get the three criminal history points. Going back to the commentary to Section 4A.1.2, it gives an example of a five-year indeterminate sentence. And they say in the case, the guidelines say in the case of an indeterminate sentence of up to five years, the relevant term we're looking at is the stated maximum. And in that case, it's five years. And we look at the stated maximum and use that to compute the criminal history points. Importantly, Application No. 2 goes on to say that what matters when we're determining criminal history points is the sentence pronounced, not the length of time actually served. The government believes that these provisions make clear that what we're supposed to be looking at when we're determining criminal history points is the stated maximum of the sentencing court's order and what the court pronounced. And we believe in this case that was a sentence of up to two years. The district court correctly applied these guideline provisions in this case. The Iowa court's sentencing order on its face revoked Jennifer Jessie's probation and committed her to the custody of the Iowa Department of Corrections for a period of up to two years. The maximum sentence pronounced was two years, so it gets three criminal history points. To avoid this outcome, Ms. Jessie essentially asked the court to look beyond the plain language of the court's sentencing order and instead look at these later proceedings and what happened with this order discharging the two-year prison sentence. The government believes this approach would be inconsistent with this court's cases. I wanted to highlight the Urbizu case, which the party cited in their briefs. Urbizu, while it didn't address a length of a sentence of imprisonment, it was more focused on the nature of the custody that the defendant was in. Urbizu makes clear that when we're resolving these kinds of questions, what we should be looking at is the language of the sentencing court's order. The court explained that relying on the plain language of the order serves a couple important purposes. First, relying on that plain language is more likely to reflect the defendant's true prior criminal conduct rather than the vagaries of the executive branch's implementation of the sentence. We can see that in this case. We have a complicated formula from the Iowa Department of Corrections that looks at all these various types of programming that she participated in. Rather than asking federal district courts that are calculating criminal history points to compute those kinds of things, the guidelines direct that, no, we just look at the sentence pronounced. Urbizu also explained that this approach promotes judicial efficiency by reducing the need for this kind of fact-finding. Frankly, this case itself presents the kinds of problems district courts are going to face if instead of relying on the face of a sentencing court judgment, they have to poke around in additional documents and think about things like earned time credits. And that's why the guidelines direct that we look at the sentence pronounced, not the length of the time actually served. I also wanted to highlight this court's decision in United States v. Drake. It was not specifically cited in either party's brief, but it was what the Urbizu decision relied upon. United States v. Drake, it's a 1991 decision. In that case, this court held that the guidelines required the court to look to the plain wording of the actual sentence imposed. And in support of that holding, this court cited Application Note 2 to Section 4A.1.2 of the guidelines, which again provides that criminal history points are based on the sentence pronounced, not the length of time actually served. In Drake, the defendant had a prior sentence of imprisonment of 78 days with credit for time served. At sentencing, he then offered an affidavit from the state court judge that basically said, well, I sentenced him to 78 days because that's how long he was in jail waiting trial. And if that wasn't the case, I really would have only sentenced him to 20 days. And so the defendant argued, well, it's really a 20-day sentence, and it should only get one criminal history point. This court rejected that argument and said we look at the plain language of the sentencing order. The sentencing order said 78 days. It receives two criminal history points. The government believes in this case the sentencing order again plainly imposed a sentence of up to two years because that is longer than a year and a month. It properly received three criminal history points. Finally, I want to address even if we get beyond this point, even if we think it's proper to go beyond the plain language of the sentencing order, the government does not believe the factual record supports Ms. Jessie's contentions. Judge Erickson, as you alluded to, that second order, really what it did, it said I've imposed a two-year sentence, and I'm now deeming that discharge based on the time you've already served. Contrary to Ms. Jessie's assertions, that was not, the sentencing court did not vacate its earlier sentence. It did not alter the judgment. It simply said I have imposed a two-year sentence, and it is now discharged. I think that's clear from all of the underlying records contained in the appellant's addendum, including the application that was filed by Ms. Jessie's attorney in that underlying state case. Yeah, the attorney actually made two separate references. One was 428 and a half days based on an affidavit that was signed by the sheriff that showed that there was 428 days plus the half I assume you were sitting there in court, so they get credit for that half day while you're going to go to court. And then there was the previous counsel's letter that asserted that there was 420 days. But in any event, it's all well in excess of. Right. I think given the time that she served, it's I think well in excess of one year and one month. But the application filed by Ms. Jessie's lawyer in that state case itself acknowledged that this was a two-year prison sentence we're talking about. That application repeatedly refers to the two-year prison sentence that has been imposed and then explains this computation of runtime and simply asks the court to deem that two-year prison sentence discharged. The state court's order deeming the sentence discharged again referenced that the prison sentence imposed in this matter is discharged. For these reasons, we think the district court was correct when it observed its sentencing in this case that everyone that was involved in that state case acknowledged that this was a two-year prison sentence. And again, I just wanted to mention, even if we accept Jessie's premise that we go beyond the plain language of the sentencing order and that we then look at all of these things, the record reflects that she served in excess of one year and one month. Thank you. Thank you. Thank you. On the issue of if it is a time-served sentence, then on the issue of how much time it's served, the sentencing guidelines provide that if somebody is given jail time or jail-type credit, jail-type drug treatment or whatever, as a condition of probation, that doesn't count. But however, when a probation revocation occurs, that time gets recaptured back in and it is considered time-served. So basically... I'm sorry. Did you say that's under the guidelines or under Iowa State law? No, under the federal sentencing guidelines. Well, but that, I guess, kind of gets us back into the problem. Do we apply federal sentencing guidelines to determine credit for time served or do we look at the Iowa State law and determine how they compute credit for time served? Well, I'm looking at the guidelines in terms of conceptually because you've got 428 days or so that was actually served, which is in excess of the statutory amount. And the guidelines say that some of that time gets recaptured if there's a probation violation. So I think we do need to look at Iowa law to determine how much. 332 days is the maximum to do a sentence. Clearly, the court was referencing when it said she's discharged her sentence, the court could only have been referenced with 332 days. At any rate, the government's argument that she... Well, I'm not sure I understand your argument. Is 332 days the maximum that you would serve in Iowa under a two-year sentence? Correct. But that doesn't mean you couldn't serve... If you get credit for all the time you were in drug treatment and on probation and everything, you could have 400 days served. You just get released because you're in excess of it. Right, but that would just be uncredited time. And essentially, it just falls on the floor. The BOP deals with uncredited time all the time. People do serve more than their sentences on occasion. And for that reason, it doesn't really count against anything. Thank you. Thank you. And, Mr. Rosenberg, I see that you are appointed under the CJA Act as well, and I want to thank you very much for the service that you provide for the people of our country. Thank you.